UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9 / 20 / 2018

SAFE STEP WALK IN TUB CO.,

                Plaintiff,

  -against-

CKH INDUSTRIES, INC.,

                Defendant.

No. 15 Civ. 7543 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff Safe Step Walk In Tub Co. ("Plaintiff" or "Safe Step") manufactures walk-in bathtubs and purportedly holds trademarks for the marketing of such tubs. Through a series of agreements executed by the parties, Defendant CKH Industries, Inc. ("Defendant" or "CKH"), was able to use those trademarks when marketing, selling, and installing Safe Step's tubs in particular geographic areas. Safe Step initiated this action claiming nonpayment of certain marketing and related fees by CKH, and CKH counterclaimed—alleging that Safe Step was violating the franchise laws of various states, breaching the agreements between the parties, and engaging in other unfair business practices including fraud. Safe Step now seeks to dismiss CKH's counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim and Rule 9(b) for failure to state the circumstances of the alleged fraud with particularity. Plaintiff also moves and for summary judgment under Federal Rules of Civil Procedure Rule 56 on Plaintiff's breach of contract claim. For the following reasons, the motion to dismiss is GRANTED in part and DENIED in part, and the motion for summary judgment is DENIED.

# BACKGROUND

## I.    Overview

Plaintiff initiated this action on September 23, 2015, for non-payment of fees associated with one of the agreements entered into between the parties, which was attached to Plaintiff's complaint ("Complaint"). (*See* Compl., Ex. A ("Marketing Addendum"), ECF No. 1.)  The agreement at issue, an addendum related to marketing, purports to modify a pre-existing "Dealership/License Agreement" between the parties, which was not attached to the Complaint but is referenced therein.  (Compl. ¶¶ 9–10, 12–13.)  Plaintiff presents the business relationship between itself and Defendant as a licensor-licensee, or supplier-dealer, arrangement: Plaintiff granted Defendant license to use its trademarks and to deal in its bathtub products.  (*Id.* ¶¶ 5, 7.)

Defendant answered Plaintiff's Complaint and asserted its own counterclaims ("First Answer," ECF No. 13); it also provided one of the underlying agreements, which Defendant alternatively refers to as a Franchise Dealership Agreement. (*See, e.g.*, First Answer ¶ 5 & Ex. A.)  Defendant filed its first amended answer with counterclaims on November 4, 2015. ("First Am. Answer," ECF No. 33.)  On March 11, 2016, Plaintiff filed a motion to dismiss the counterclaims in Defendant's First Amended Answer. ("Pl. First Mot. to Dismiss," ECF No. 50.)

In an opinion filed on March 17, 2017, this Court granted Plaintiff's motion in part and narrowed Defendant's remaining counterclaims. ("March 2017 Opinion," ECF No. 59); *see generally Safe Step Walk In Tub Co. v. CKH Indus., Inc.*, 242 F. Supp. 3d 245 (S.D.N.Y. 2017). For Defendant's franchise-related counterclaims, the Court held that, based on Defendant's allegations, Defendant's Safe Step-related operations "qualify as franchises under each applicable state's law, entitling Defendant to pursue these additional protections and causes of actions at this stage." *Safe Step Walk In Tub Co.*, 242 F. Supp. 3d at 261.  The Court also noted

that under the New York franchise law's statute of limitations, claims based on failure to provide disclosures when the parties entered into the agreements are barred in New York while claims based on the failure to renew or the constructive termination of the agreements accrued between 2014 and 2015 are not barred. *Id.* Turning to the Defendant's contract claims, the Court held that the Defendant sufficiently alleged that the regional franchise agreements, including oral agreements, were contracts,[1] and that breaches occurring before any potential expiration or before the modification by the Marketing Addendum is actionable. *Id.* at 264–65. If a breach occurred after the Marketing Addendum, it is not actionable to the extent that it is in direct conflict with the terms of the Marketing Addendum. *Id.* at 265–66. The Court also held that Defendant may proceed with its quasi-contract theories in the alternative. *Id.* at 267. For Defendant's fraud claim, the Court held that Defendant's "fraud allegations with regard to [the] negotiations and pre-agreement activities are sufficiently pleaded at this stage" but that any fraud claim related to the performance of the agreements' terms would be dismissed. *Id.* at ¶ 270–71. The Court declined to decide on Defendant's request for an injunction and directed the Defendant to file any amended answer in conformance with the opinion. *Id.* at 271.

Defendant filed a Second Amended Answer on April 3, 2017. ("Second Am. Answer," ECF No. 61.) Plaintiff filed the motion currently before the Court, the Second Motion to Dismiss, on September 14, 2017. ("Pl. Second Mot. to Dismiss," ECF No. 78.)

---

[1] "These allegations plausibly support Defendant's claim that the agreements, whether entirely oral or expired under their original terms, existed, continue to exist, and are enforceable." *Safe Step Walk In Tub Co. v. CKH Indus., Inc.,* 242 F. Supp. 3d 245, 264–65 (S.D.N.Y. 2017).

## II. The Agreements

Based upon the agreements provided by the parties and incorporated into their pleadings, it is evident that Plaintiff and Defendant entered into base or "regional" agreements, based on sales regions, with addendums specifying components of the business relationship. For example, the base agreement for the New York and New Jersey area is styled as a "Dealership/License Agreement" between Safe Step (as licensor) and CKH (as licensee) and covers specific counties in both states. (*See* Second Am. Answer, Ex. A ("NY/NJ Agreement") ¶ 26 (defining the "territory" for the agreement).) It includes a list of "[t]rademarks, [m]arks, [s]logans and [n]ames" that Defendant could use within the designated territory. (NY/NJ Agreement at p. 13; *id.* ¶ 7.) Defendant was to be the "exclusive Licensee" allowed to market Plaintiff's products in the region, and Plaintiff was obligated to "[s]end all relevant sales leads in [CKH's] [t]erritory" that it garnered "through customer inquiry, advertising, website, trade shows, or any other type of media lead generation" to Defendant. (*Id.* ¶¶ 2, 8(b).) Defendant, in turn, was required to achieve either the minimum sales requirements or the advertising budget outlined in one of the agreement's addendums. (*Id.* ¶ 5.) The agreement also provided for the contemporaneous payment of a $10,000 "licensing" fee. (*Id.* at p. 16.)[2] The parties expressly agreed, however,

---

[2] The "Granting of Appointment" clause, (*see* NY/NJ Agreement ¶ 1), summarizes the main features of the agreement:

> Licensee will be appointed as the exclusive Licensee to market, sell, install and service only the products . . ., reflected on the attached form. Licensee shall purchase the Products from the Licensor in accordance with the terms and any conditions of this Agreement. . . . Licensee agrees that it will only market the Product(s) in its area or areas of prime responsibility ('Territory'), . . . from locations approved by Licensor in its discretion not to be unreasonably withheld. Licensee agrees to use its best efforts to market, sell, promote and install the Products and related services covered by this Agreement. Licensee shall pay to Licensor a License Fee in the Amount of $10,000.00 commencing upon the execution and delivery of this Agreement by the parties hereto, and no annual Licensee Fee thereafter.

that "Licensee [CKH] [was] an independent contractor and [had] not been granted a franchise." (*Id.* ¶ 14.) This agreement took effect on May 10, 2009. (Second Am. Answer ¶ 85.)

The agreement also specified a number of items relevant to issues in this action, including areas where Plaintiff could direct Defendant to make changes to its business model (*e.g.*, NY/NJ Agreement ¶ 10), the term of the agreement (*id.* ¶ 2 (five-years subject to renewal terms)), grounds for termination of the agreement and the effect of termination (*id.* ¶ 3), a mandatory arbitration clause (*id.* ¶ 18), and a forum selection clause in the event either party sought injunctive relief (*id.* ¶ 24). Finally, the provisions of the agreement specified that it, along with the attached or referenced schedules, constituted the entire agreement between the parties, that any changes to the agreement had to be made in writing, and that each provision was intended to be severable in case any particular provision or set of provisions were deemed invalid. (*See id.* ¶ 23.)

The other regional agreements contain the same base terms for different regions, incorporating the same trademarks that Defendant could use when selling and marketing Plaintiff's tubs in the region, similar minimum sales requirements or advertising contributions to be made by Defendant, and the same "license fee" that Defendant would pay in order to enter into a given regional agreement. (*See* Second Am. Answer, Ex. B ("Mass./NH/VT Agreement"), Ex. C ("Albany Agreement"), Ex. D ("Hartford Agreement").) Defendant also alleges the existence of an oral agreement under the same terms covering Boston ("Boston Agreement")[3] and the counties of Hampshire and Bristol in Massachusetts ("Hampshire/Bristol Agreement"). (Second Am. Answer ¶¶ 79–80, Ex. E.) The Mass./NH/VT Agreement took effect on June 10,

---

[3] Defendant attaches the proposed version of the Boston Agreement, which was never signed, and notes that the parties had an oral agreement. (Second Am. Answer ¶ 79, Ex. E.)

2009, the Albany and Hartford Agreements on July 15, 2009, and the Boston and

Hampshire/Bristol Agreements on February 10, 2010. (*Id.* ¶ 85.)

The Marketing Addendum, which serves as the basis for Plaintiff's action, ostensibly

modified all of the regional agreements to provide a fee schedule for Plaintiff's national and

regional advertising efforts, and to require Defendant to pay Plaintiff on a monthly basis "for the

unique leads received" as a result of the advertising, but left the remaining terms intact.

(Marketing Addendum pp. 1, 3–4.) The addendum took effect January 1, 2014. (*Id.* p. 1.)

## III.     Defendant's Allegations

Defendant brings fourteen counterclaims against Plaintiff for breach of contract;

violations of the New York, New Jersey, Connecticut, and Rhode Island state franchise laws;

common law fraud; promissory estoppel; unjust enrichment; and injunctive relief. (Second Am.

Answer ¶¶ 130–227.) Defendant seeks judgment against Plaintiff on any counterclaim in an

amount to be determined at trial,[4] injunctive relief, attorneys' fees, punitive damages, costs and

disbursements, and dismissal of the Plaintiff's complaint. (*Id.* ¶ 228.)

According to Defendant, Plaintiff was in fact a franchisor who attempted to structure the

agreements between Plaintiff and Defendant to avoid federal and state franchise laws. (*Id.*

¶¶ 66–73, 98.) Defendant alleges that Plaintiff has defaulted under the regional agreements by

refusing to honor its obligations and by terminating the agreements, or failing to renew them,

despite Defendant's performance of its side of the bargains. (*Id.* ¶¶ 100–01, 106, 109–15.)

Defendant contends that Plaintiff's acts violate state franchise laws and constitute a fraud

perpetrated by Plaintiff designed to intentionally escalate Defendant's costs in order to

---

[4] Defendant specifies that the amount is reasonably believed to be greater than $75,000. (*Id.* ¶ 228.)

constructively terminate the alleged franchises and unlawfully compete directly against

Defendant. (*Id.* ¶¶ 60, 120, 122.)

## LEGAL STANDARDS

### I.  Dismissal standard under Rule 12(b)(6)

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

*accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  A claim is facially plausible

when the factual content pleaded allows a court "to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.*  "While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  To

survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a

right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d

87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  The Court must take all material

factual allegations as true and draw reasonable inferences in the non-moving party's favor, but

the Court is " 'not bound to accept as true a legal conclusion couched as a factual allegation,' "

or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of

action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court

must consider the context and "draw on its judicial experience and common sense." *Id.* at 662.

A court is generally confined to the facts alleged in the complaint for the purposes of considering

a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d

Cir. 1991).  A court may, however, consider documents attached to the complaint, statements or

documents incorporated into the complaint by reference, matters of which judicial notice may be

taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

## II.    Dismissal standard under Rule 9(b)

While the rules of federal pleading typically require "a short and plain statement," *see* Fed. R. Civ. P. 8, fraud claims have heightened pleading requirements. *See* Fed. R. Civ. P. 9(b). In order to satisfy Rule 9(b), the plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns Inc., v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir. 2007).

## III.    Standard for summary judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is appropriate where a party who bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323 (internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its

favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). However, in opposing a motion for summary judgment, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Further, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

## DISCUSSION

As a threshold matter and consistent with the March 2017 Opinion, the Court will apply Tennessee law to Defendant's counterclaims. *Safe Step Walk In Tub Co. v. CKH Indus., Inc.*, 242 F. Supp. 3d 245, 256–57 (S.D.N.Y. 2017). The Court will also apply Tennessee law to Plaintiff's claims.[5] Tennessee has a close relationship and a material connection to Plaintiff and to the parties' agreements, and New York choice-of-law principles require this Court to enforce the choice-of-law provisions by applying Tennessee law. *See LaGuardia Assocs. v. Holiday Hosp. Franchising, Inc.*, 92 F. Supp. 2d 119, 127 (E.D.N.Y. 2000) (holding that Tennessee had a "reasonable relationship" to the parties because the party that drafted agreements selecting law of Tennessee was located in that state when the parties entered into the contracts); *Safe Step Walk In Tub Co.*, 242 F. Supp. 3d at 256–57.

---

[5] Neither party objects. (Pl. Second Mot. to Dismiss p. 6 (stating that Tennessee law should also govern Plaintiff's claims)); (Def. Op. to Pl. Second Mot. to Dismiss, p. 9, ECF No. 82 (applying Tennessee's breach of contract law to Plaintiff's breach of contract claim).)

## I. Defendant's Counterclaims[6]

Similar to the counterclaims in Defendant's First Amended Answer, Defendant's counterclaims fall into three general categories: statutory franchise claims, contract-related claims, and fraud claims.

### a. Franchise-based claims

In Defendant's Second Amended Answer, Defendant argues that the regional agreements constitute franchise agreements between Plaintiff and Defendant under New York, New Jersey, Connecticut, and Rhode Island state law provisions, and that these statutes afford CKH additional protections that Plaintiff allegedly violated by terminating the franchise, constructively or otherwise, without good cause.[7] (Second Am. Answer ¶¶ 146–59, 169–74, 192–97); *see* Conn. Gen. Stat. Ann. §§ 42-133e – 42-133n; N.J. Stat. Ann. §§ 56:10-1–56:10-15; N.Y. Gen. Bus. Law. §§ 680–695; R.I. Gen. Laws Ann. §§ 19-28.1-1–19-28.1-34.

The Court has already held that Defendant's Safe Step-related operations "qualify as a franchise under each applicable state's law, entitling Defendant to pursue these additional [statutory] protections and causes of actions at this stage." *Safe Step Walk In Tub Co. v. CKH Indus., Inc.*, 242 F. Supp. 3d 245, 261 (S.D.N.Y. 2017). Defendant's Second Amended Answer alleges that Plaintiff violated each regional agreement and imposed unreasonable standards as part of "a scheme to defraud," prohibited acts under each relevant state statute. Conn. Gen. Stat. Ann. § 42-133l; N.J. Stat. Ann. § 56:10-7; N.Y. Gen. Bus. Law. § 687; R.I. Gen. Laws Ann. § 19-28.1-17; (Second Am. Answer ¶¶ 60, 101, 111–12, 122.) Each of these state statutes allows

---

[6] For the purposes of Plaintiff's motion to dismiss Defendant's counterclaims, the Court assumes the truth of the facts alleged in Defendant's Second Amended Answer. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court also considers documents which are attached to the Complaint or Second Amended Answer, incorporated by reference, or other matters of which judicial notice may be taken. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

[7] As this Court held in the March 2017 Opinion, "Tennessee would honor the protections available under the franchise acts of states where Defendant allegedly has franchises." *Safe Step Walk In Tub Co.*, 242 F. Supp. 3d at 260.

franchisees to pursue civil damages for violation of a franchise agreement. Conn. Gen. Stat. Ann. § 42-133g; N.J. Stat. Ann. § 56:10-10; N.Y. Gen. Bus. Law. § 691; R.I. Gen. Laws Ann. § 19-28.1-21. Therefore, Defendant states a facially plausible claim for violations of the New York, New Jersey, Connecticut, and Rhode Island franchise laws.

Because of the New York franchise law's statute of limitations, as discussed in the March 2017 Opinion, any claims for violations of the New York franchise law from when parties entered into the agreements are barred, and claims based on the failure to renew or the constructive termination of the agreements accrued between 2014 and 2015 remain.[8] *See Safe Step Walk In Tub Co.*, 242 F. Supp. 3d at 261.

### b. Contract-related claims

#### i. Breach of contract

Defendant claims that Plaintiff breached each of the regional franchise agreements. (Second Am. Answer ¶¶ 130–37, 160–67, 175–82, 184–91, 198–205.)

To establish a breach of contract claim under Tennessee law, "a plaintiff seeking damages for an alleged breach of contract must prove: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by

---

[8] The March 2017 Opinion states:

> One caveat to the breadth of these claims, however, is that New York's franchise law has a statute of limitations that "provides that an action 'shall not be maintained to enforce a liability created under this section unless brought before the expiration of three years after the act or transaction constituting the violation.'" *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102-03 (2d Cir. 2014) (quoting N.Y. Gen. Bus. Law § 691(4)). Thus, any claims based on failure to provide disclosures when the parties entered into the agreement would be barred in New York. *See id.* at 103 ("the 'act or transaction constituting the violation' occurred when the franchises were purchased). Claims based on the failure to renew or the constructive termination of the agreements accrued between 2014 and 2015, and would not be barred since Defendant filed its counter-claims in October 2015.

*Safe Step Walk In Tub Co.*, 242 F. Supp. 3d at 261.

the breach of contract." *AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc.*, 726 F. Supp. 2d 307, 318 (S.D.N.Y. 2010) (citations omitted).

In the March 2017 Opinion, this Court held that the Defendant established a facially plausible claim that each of the regional agreements exist and are enforceable. *Safe Step Walk In Tub Co.*, 242 F. Supp. 3d at 264–65. This Court also held that any breach occurring under the original terms of the agreements, before any potential expiration or before the modification by the Marketing Addendum, is actionable. If a breach occurred after the Marketing Addendum, it is not actionable to the extent that it is in direct conflict with the terms of the Marketing Addendum. *Id.* Here, Defendant's Second Amended Answer plausibly alleges that that Plaintiff breached the regional franchise agreements with specific examples. (*See* Second Am. Answer ¶ 101.) Defendant has also sufficiently alleged that damages resulted from the breaches. (*Id.* ¶¶ 125–29 (alleging economic damages in excess of $75,000 as well as damage to Defendant's goodwill and reputation).) Accordingly, Defendant's Second Amended Answer contains a facially plausible breach of contract claim.

Plaintiff's motion to dismiss Defendant's counterclaims for breach of the regional agreements is denied.[9]

### ii. Quasi-contract claims

Defendant alleges that it is entitled to recover under the quasi-contract doctrines of unjust enrichment and promissory estoppel. Although Defendant asserts breach of contract claims, Defendant also may proceed under these quasi-contract theories in the alternative at this time

---

[9] The March 2017 Opinion made it clear that Defendant could only bring claims for breaches (1) occurring before any potential expiration; (2) occurring before the Marketing Addendum; or (3) occurring after the Marketing Addendum but not in direct conflict with the terms of the Marketing Addendum. *Safe Step Walk In Tub Co.*, 242 F. Supp. 3d at 264–65. The Court understands Defendant's breach of contract claims in the Second Amended Answer to only be for those breaches that the March 2017 Opinion said were actionable and therefore denies Plaintiff's motion to dismiss. If the Defendant were to assert any breach of contract claims for breaches this Court has previously held to not be actionable, those claims would be denied.

until the ultimate viability of the contract claims is determined on a complete factual record. *Garland v. Ford Motor Co.*, No. 12-CV-00121, 2013 WL 3937017, at \*5 (M.D. Tenn. July 30, 2013) ("The promissory estoppel and unjust enrichment claims in this case are dependent upon the existence of that alleged contract, and the damages flow from the alleged breach of that contract.").

Unjust enrichment is (1) a benefit conferred upon a party by the complainant; (2) that is appreciated by the defending party; and (3) acceptance of that benefit under the circumstances without payment of value would be inequitable. *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). Through unjust enrichment, a court may "impose a contractual obligation where one does not exist." *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998). Parties claiming breach of contract may also claim unjust enrichment as an alternative theory of recovery. *See Holt v. Macy's Retail Holdings, Inc.*, 719 F. Supp. 2d 903, 916 (E.D. Tenn. 2010); *Freeman Indus. LLC*, 172 S.W.3d at 524–25. However, a claim for unjust enrichment will not survive a motion to dismiss unless the nonmoving party explains how the claim is not simply duplicative of its breach of contract claims. *Ebin v. Kangadis Food Inc.*, No. 13–CV–2311, 2013 WL 6504547, at \*7 (S.D.N.Y. Dec. 11, 2013). It follows that "where there is a valid and enforceable contract between the parties, and the subject matter of the unjust enrichment claim is covered by the contract" a court must dismiss the unjust enrichment claim. *ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n*, 27 F. Supp. 3d 494 (S.D.N.Y. 2014).

Here, Defendant does not include any facts to support a plausible conclusion that its unjust enrichment counterclaim is separate from its breach of contract counterclaims. Defendant only states that "Plaintiff was unjustly enriched by reason of its fraud and misappropriation,

13

diversion and conversion of Defendant's customers and trade secrets regarding potential customers, leads and business opportunities." (Second Am. Answer ¶ 220.) This conclusory statement is insufficient to state a facially plausible unjust enrichment counterclaim. Defendant also fails to plead its unjust enrichment counterclaim in the alternative. Accordingly, Defendant's unjust enrichment counterclaim is dismissed.

Defendant also claims that promissory estoppel necessitates imposing a contract between Defendant and Plaintiff. "A promisor who induces substantial change of position by the promisee in reliance on the promise is estopped to deny its enforceability as lacking consideration." *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982). To establish a claim of promissory estoppel, a claimant must show that "(1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonabl[y] [regarding] [or] in justifiable reliance on the promise as made." *Id.* If promissory estoppel is sufficiently alleged, "the difficulty of succeeding on a promissory estoppel claim is not sufficient reason for dismissal on a motion to dismiss." *AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc.*, 726 F. Supp. 2d 307, 321 (S.D.N.Y. 2010). This Court held that Defendant's "allegations are sufficient to set forth such a claim and, therefore, to survive Plaintiff's motion to dismiss" and the Court holds that Defendant's promissory claim in its Second Amended Answer also survives a motion to dismiss. *See Safe Step Walk In Tub Co.*, 242 F. Supp. 3d at 267–68. Defendant suffered substantial economic damage in reliance on Plaintiff in excess of $1,000,000. (Second Am. Answer ¶ 125.) Plaintiff could have reasonably foreseen these damages because they stem from, among other sources, lost sales, revenue, and profits under the agreements, and because Plaintiff contributed to the damages by intentionally escalating Defendant's costs. (*See*

Second Am. Answer ¶ 121–22.) Based on Defendant's allegations, Defendant acted reasonably in relying on the terms of the regional agreements and Plaintiff's motion to dismiss this claim is denied. (*Id.* ¶¶ 87–95, 97–98.)

### c. Fraud claim

The Defendant alleges that Plaintiff committed fraud in violation of Tennessee's common law tort. (Second Am. Answer ¶¶ 212–18.) This Court held that Defendant's fraud claim arising from pre-agreement activities and negations were actionable. *See Safe Step Walk In Tub Co.*, 242 F. Supp. 3d at 270.

Tennessee permits common law fraud claims to allow complainants "to pursue several alternative theories of recovery and to structure their claims in the manner that is most beneficial to them." *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 909 (Tenn. 1999). However, Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "To satisfy the pleading requirements of Rule 9(b), a complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc.*, 726 F. Supp. 2d 307, 322 (S.D.N.Y. 2010) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Similar to the fraud claims in Defendant's First Amended Answer, Defendant again broadly alleges that Plaintiff's entire course of dealings was designed to perpetrate a fraud against Defendant by intentionally escalating Defendant's costs in an effort to constructively terminate the alleged franchises and unlawfully compete against Defendant. (Second Am. Answer ¶¶ 60, 101, 122); *Safe Step Walk In Tub Co.*, 242 F. Supp. 3d at 270. Defendant also

again alleges that Plaintiff failed to provide disclosure documents "[p]rior to entering the FDAs" as required under franchise laws, seemed to accept Defendant's request for a renewal of the agreements without actually intending to renew, and failed to make buy-out offers for Defendant's alleged franchise. (Second Am. Answer ¶¶ 83, 102, 105–06, 109); *Safe Step Walk In Tub Co.*, 242 F. Supp. 3d at 270.

As this Court noted in its March 2017 Opinion, in Tennessee, " 'intentional misrepresentation,' 'fraudulent misrepresentation,' and 'fraud' are different names for the same cause of action." *Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012). A claim for intentional misrepresentation requires that:

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001). Where a "[p]laintiff is making a separate claim of fraud in addition to claiming [a] [d]efendant breached their agreements," the claim of fraud "arises from conduct during the negotiations and separate from the agreement." *Arch Wood Prot., Inc. v. Flamedxx, LLC*, 932 F. Supp. 2d 858, 865 (E.D. Tenn. 2013).

Defendant's fraud allegations relating to negotiations and pre-agreement activities, which include any fraud in the parties' course of dealings before the agreements and Plaintiff's failure to provide the disclosure documents, are sufficiently facially plausible based on Defendant's Second Amended Answer.[10] However, Defendants fraud counterclaims for Plaintiff's failure to

---

[10] Plaintiff alleges that "[t]o the extent that CKH claims that the federal FTC Rule provides the disclosure requirement that would support a fraud by omission claim . . . CKH's claim fails under Tenesee's three year statute of limitations on fraud claims." (Pl. Second Mot. to Dismiss pp. 18, 21.) Tennessee has a three year statute of

honor the renewal and failure to make buy-out offers are dismissed, as, based on the face of Defendant's Second Amended Answer, these events occurred after the parties entered into the agreements.[11]

### d. Injunctive relief

Defendant's counterclaim for injunctive relief in this Second Amended Answer is identical to its counterclaim for injunctive relief in its First Amended Answer. (*Compare* Second Am. Answer ¶¶ 22–27, *with* First Am. Answer ¶¶ 288–93.) In the March 2017 Opinion, this Court declined to decide whether Defendant's request to essentially enjoin Plaintiff from further alleged breaches of the agreements is unnecessary given Defendant's claims for damages. The Court continues to find that the appropriateness of injunctive relief will be better decided upon a more complete factual record. *See Safe Step Walk In Tub Co.*, 242 F. Supp. 3d at 271.

## II. Motion for Summary Judgment on Plaintiff's Breach of Contract Claim[12]

In addition to its motion to dismiss Defendant's counterclaims, Plaintiff also moves for summary judgment on its breach of contract claim because there are no genuine issues of material fact related to the breach of contract claim. (Pl. Second Mot. to Dismiss p. 26.) Plaintiff claims that there is no genuine dispute of the facts required to satisfy a breach of contract claim, which requires (1) proof of the existence of a contract, (2) breach, and (3) damages caused by the

---

limitations on tort claims for damages to personal or real property. Tenn. Code Ann. § 28-3-105. Defendant's Second Amended Answer does not rely solely on the FTC Rule to support its claim that Plaintiff failed to provide disclosures to Defendant, but alleges that this is one of several actions in Plaintiff's scheme to defraud Defendant. (*See* Second Am. Answer ¶¶ 60, 83 101 – 02, 105–06, 109, 122).

[11] If a fraud claim is " 'rooted in the performance of [an] agreement's terms,' [then] a plaintiff will be held to contractual remedies." *Arch Wood Prot., Inc. v. Flamedxr, LLC*, 932 F. Supp. 2d 858, 865 (E.D. Tenn. 2013) (quoting *Fifth Third Leasing Co. v. Cherokee Pontiac, Buick, Olds, GMC Trucks, LLC*, No. E2001–01628–COA–R3–CV, 2002 WL 407224, at *2 (Tenn. Ct. App. Mar. 13, 2002)). "Defendant's allegations casting the failure to renew as fraud are essentially a claim for tortious breach of contract and cannot proceed. *Arch Wood Prot.*, 932 F. Supp. 2d at 865 ("tortious breach of contract . . . is not a cognizable cause of action in Tennessee")." *Safe Step Walk In Tub Co.*, 242 F. Supp. 3d at 271.

[12] Plaintiff's motion initially implies that Plaintiff seeks summary judgment for all of its claims. However, the substance of Plaintiff's motion only requests summary judgment for its breach of contract claim. (Pl. Second Mot. to Dismiss pp. 2, 26.) Therefore, the Court will analyze Plaintiff's breach of contract claim.

breach. *See AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc.*, 726 F. Supp. 2d 307, 318 (S.D.N.Y. 2010). According to Plaintiff, (1) the Marketing Addendum is a valid and enforceable contract, (2) Defendants breached the Marketing Addendum by refusing to pay its marketing fees starting in the first quarter of 2015 and late fees and by failing to capture over 1,500 tub sales, and (3) Plaintiff has suffered damages as a result. (Compl. ¶ 39–44.)

However, some of these facts are in dispute. Critically, the parties dispute whether the Marketing Addendum was a valid, enforceable contract. While there is no genuine dispute as to whether the Marketing Addendum at issue expired in 2015,[13] Defendant also argues that the Marketing Addendum is not an enforceable contract because there was no meeting of the minds on essential terms,[14] including "the for-profit nature of the marketing campaign, the sales volume criteria, the purchase price to be paid for customer leads, the terms and conditions of purchase, and/or the fines and penalties to be paid." (Second Am. Answer ¶¶ 40, 44.) This failure to achieve a meeting of the minds is due, in part, to Plaintiff's alleged fraud. (*Id.*) Defendant also states that, in multiple emails and in a face-to-face meeting in November 2014, it rejected the national advertising and marketing program's costs, fees, and penalties that Plaintiff claims it is entitled to under the Marketing Addendum. (Def. Keegan Decl. ¶¶ 38–52); (Compl. ¶ 42.) Defendant provides some of these emails which indicate that Defendant objected to the marketing fees and was having difficulty negotiating agreement terms with Plaintiff. (Def. Keegan Decl., Exs. S, T.) After that November 2014 meeting with Plaintiff, according to

---

[13] The March 2017 Opinion this Court stated that "Defendant is incorrect as a matter of contract interpretation that the Marketing Addendum by its terms expired in 2015. As Defendant alternatively argued . . . the addendum is co-terminus with the regional agreements it modified and would have extended along with those agreements, absent a specific repudiation." *See Safe Step Walk In Tub Co.*, 242 F. Supp. 3d at 266. The Plaintiff relies on this portion of the March 2017 Opinion to establish that there is no genuine dispute about the existence of a contract. (Pl. Mot. to Dismiss p. 27.) As discussed above, there are other genuine disputes about whether the Marketing Addendum was an enforceable agreement.

[14] Defendant refers to these terms as the national advertising and marketing program terms. (Def. Keegan Decl. ¶ 6.)

Defendant, Defendant withdrew from the national advertising and marketing program terms in the Marketing Addendum, as it was entitled to do under the terms of the parties' agreement. (Def. Op. to Pl. Second Mot. to Dismiss p. 9.); (Def. Keegan Decl. ¶¶ 36. 60, Ex. L p. 3.) Plaintiff contends that Defendant "never withdrew from the Marketing Addendum." (Pl. Hall Decl. ¶ 3.)

The existence of a valid and enforceable contract is material to a breach of contract claim,[15] and, construing the evidence the light most favorable to the nonmoving party, the Defendant, see *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010), there is a genuine dispute between the parties whether the Marketing Addendum was enforceable and whether Defendant successfully withdrew from the contract in November 2014.

Additionally, Plaintiff's motion for summary judgment is premature. "The nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000). In *Helstrom*, the Second Circuit held that the district court's grant of summary judgment was premature because the nonmoving party "was denied the opportunity to conduct discovery of any sort, and was even precluded from taking depositions." *Id.* p. 97–98. Similarly, here, Defendant has not had the opportunity to conduct discovery, and this is not one of the "rarest of cases" for which summary judgement may be granted before discovery; there are genuine issues of material fact.

---

[15] If the party who bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment is appropriate *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiff's motion for summary judgment on its breach of contract claim is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Defendant's counterclaims is GRANTED in part and DENIED in part. Plaintiff's motion to dismiss Defendant's unjust enrichment counterclaim is granted. Plaintiff's motion to dismiss Defendant's fraud counterclaim is granted only for Defendant's fraud counterclaims for failure to honor the agreement renewal and failure to make buyout offers. Plaintiff's motion to dismiss Defendant's franchise counterclaims is granted only for those alleged violations of the New York franchise law from when parties entered into the agreements, which are outside of the statute of limitations. Plaintiff's motion to dismiss Defendant's remaining counterclaims, including the remainder of the fraud counterclaims, is denied.

Additionally, for the foregoing reasons, Plaintiff's motion for summary judgment is denied without prejudice to its being renewed at the close of discovery.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 78. Plaintiff is directed to file an answer to the counterclaims in Defendant's Second Amended Answer on or before October 12, 2018. The parties are directed to confer, complete, and submit to the Court the attached amended case management plan before the initial pre-trial conference. The parties are directed to notify Magistrate Judge Smith of this opinion, submit the amended case management plan to Judge Smith, and contact Judge Smith to schedule a conference. This constitutes the Court's Opinion and Order.

Dated:    September 20, 2018               SO ORDERED:
          White Plains, New York

NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. Jan. 2012

-----------------------------------------------------------x

                                                    **Amended**
                                          **CIVIL CASE DISCOVERY PLAN**
                          Plaintiff(s),          **AND SCHEDULING ORDER**

       - against -


                          Defendant(s).          _____ CV _____ (NSR)
-----------------------------------------------------------x

        This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with
counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

   1.    All parties [consent] [do not consent] to conducting all further proceedings before
         a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).
         The parties are free to withhold consent without adverse substantive consequences.
         (If all parties consent, the remaining paragraphs of this form need not be
         completed.)

   2.    This case [is] [is not] to be tried to a jury.

   3.    Joinder of additional parties must be accomplished by
         _____.

   4.    Amended pleadings may be filed until _____.

   5.    Interrogatories shall be served no later than _____, and responses
         thereto shall be served within thirty (30) days thereafter.  The provisions of Local
         Civil Rule 33.3 [shall] [shall not] apply to this case.

   6.    First request for production of documents, if any, shall be served no later than
         _____.

   7.    Non-expert depositions shall be completed by _____.

         a.    Unless counsel agree otherwise or the Court so orders, depositions shall not
               be held until all parties have responded to any first requests for production
               of documents.

         b.    Depositions shall proceed concurrently.

         c.    Whenever possible, unless counsel agree otherwise or the Court so orders,
               non-party depositions shall follow party depositions.

8.   Any further interrogatories, including expert interrogatories, shall be served no
     later than _____.

9.   Requests to Admit, if any, shall be served no later than
     _____.

10.  Expert reports shall be served no later than _____.

11.  Rebuttal expert reports shall be served no later than _____.

12.  Expert depositions shall be completed by _____.

13.  Additional provisions agreed upon by counsel are attached hereto and made a part
     hereof.

14.  **ALL DISCOVERY SHALL BE COMPLETED BY**
     _____.

15.  Any motions shall be filed in accordance with the Court's Individual Practices.

16.  This Civil Case Discovery Plan and Scheduling Order may not be changed without
     leave of Court (or the assigned Magistrate Judge acting under a specific order of
     reference).

17.  The Magistrate Judge assigned to this case is the Hon. _____.

18.  If, after entry of this Order, the parties consent to trial before a Magistrate Judge,
     the Magistrate Judge will schedule a date certain for trial and will, if necessary,
     amend this Order consistent therewith.

19.  The next case management conference is scheduled for _____,
     at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated:  White Plains, New York
        _____


                                          _____
                                          Nelson S. Román, U.S. District Judge