# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

SAFE STEP WALK-IN TUB CO.,

                Plaintiff,

      -against-                  Civil No. 15-cv-07543 (NSR) (LMS)

CKH INDUSTRIES, INC.,

                Defendant.

-------------------------------------------------------X

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DISCOVERY AND PRODUCTION AND/OR SANCTION ANY WILLFUL NON-COMPLIANCE

---

*Respectfully submitted,*

**FEERICK NUGENT MACCARTNEY PLLC**
By:    Donald J. Feerick, Jr.
        Patrick A. Knowles
        Patrick J. McGorman
96 South Broadway
South Nyack, New York 10960
Tel.: (845) 353-2000

**GOLDSTEIN LAW FIRM PLLC**
By: Jeffrey Goldstein
1629 K St. NW - Suite 300
Washington, DC 20006
Tel.: (202) 293-3947

*Attorneys for Defendant CKH Industries, Inc.*

## TABLE OF CONTENTS

Page(s)

INTRODUCTION AND BACKGROUND OF DISPUTE ............................................................ 1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND ........................................... 7

    DISCOVERY DEMANDS AT ISSUE HEREIN ................................................. 9

ARGUMENT ...................................................................................................... 12

    POINT I

    SAFE STEP IS REQUIRED TO PRODUCE ALL RELEVANT DOCUMENTS ............. 12

        A. Legal Standard ...................................................................... 12

        B. The Financial Records and Communication With Other Dealers
           Sought Are Relevant and Discoverable ............................................. 14

        C. Safe Step's Ferguson Sale-Related Documents Sought are Relevant and
           Discoverable ........................................................................... 17

        D. Safe Step's Agreements and Communications With Other
           Franchisees/Dealers Sought Are Relevant and Discoverable ............................ 17

    POINT II

    ATTORNEY CLIENT PRIVELEGE HAS BEEN WAIVED AND/OR
    THE CRIME FRAUD EXCEPTION APPLIES ............................................... 18

        A. The Attorney Client Privilege Has Been Waived ............................... 18

        B.  The Crime-Fraud Exception Applies ................................................ 22

    POINT III

    THE COURT SHOULD AWARD COSTS AND BE REASONABLE
    ATTORNEYS' FEES ASSOCIATED WITH MAKING THIS MOTION ..................... 24

    POINT IV

    THE COURT SHOULD PRECLUDE EVIDENCE AS A DISCOVERY SANCTION
    AGAINST SAFE STEP ...................................................................... 24

CONCLUSION ...................................................................................... 25

TABLE OF AUTHORITIES

**Cases**                                                                 **Page No(s).**

A.I.A. Holdings, S.A. v. Lehman Brothers, Inc.,
   1999 U.S. Dist. LEXIS 1183, 1999 WL 61442 (S.D.N.Y. Feb. 3, 1999) ................................ 22

Arch Assocs., Inc. v. HuAmerica Int'l, Inc.,
   1994 U.S. Dist. LEXIS 746, 1994 WL 30487, at *1 (S.D.N.Y. Jan. 28, 1994) ...................... 13

Cyberchron v. Calldata Sys. Dev.,
   47 F.3d 39 (2d Cir. 1995) ............................................................................................... 16

Design Strategy, Inc. v. Davis,
   469 F.3d 284, 296 (2d Cir. 2006) .................................................................................. 24-25

Financial Guaranty Ins. Co. v. Putnam Advisory Group,
   314 F.R.D. 85 (S.D.N.Y. 2016) .................................................................................... 13, 14

Fireman's Fund Ins. Co. v. Great American Ins. Co. of New York,
   284 F.R.D. 132 (S.D.N.Y. 2012) ...................................................................................... 13

Golden Pacific Bancorp v. FDIC,
   273 F.3d 509 (2d Cir. 2001) ............................................................................................. 16

IBM Corp. v. Naganayagam,
   2016 WL 11483935 (S.D.N.Y. Dec. 9, 2016) (Smith, M.J.) ................................. 12, 13, 14, 24

In re Grand Jury Subpoena Duces Tecum,
   731 F.2d 1032 (2d Cir. 1984) ........................................................................................ 22-23

In re Horowitz,
   482 F.2d 72 (2d Cir. 1973), *cert. denied*, 414 U.S. 867 (1973) ............................................. 18

In re John Doe Corp.,
   675 F.2d 482 (2d Cir. 1982) ........................................................................................ 20, 21

In re Kidder Peabody Sec. Litig.,
   168 F.R.D. 459 (S.D.N.Y. 1996) ...................................................................................... 19

In re Omnicom Group, Inc. Sec. Litig.,
   233 F.R.D. 400 (S.D.N.Y. 2006) ...................................................................................... 11

In re Richard Roe, Inc.,
   68 F.3d 38 (2d Cir. 1995) ("Roe I") .............................................................................. 18, 22

ii

In re Richard Roe, Inc.,
   168 F.3d 69 (2d Cir. 1999) ("Roe II") ................................................................ 22

In re John Doe Corp.,
   675 F.2d 489 (2d Cir. 1982)...................................................................... 19, 20

Montesa v. Schwartz,
   2015 U.S. Dist. LEXIS 186262, 2015 WL 13016354, at *1 (S.D.N.Y. Nov. 3, 2015)............ 13

Oppenheimer Fund, Inc. v. Sanders,
   437 U.S. 340 (1978)............................................................................... 13

Refco Group, Ltd., LLC v. Cantor Fitzgerald, LP,
   2014 U.S. Dist. LEXIS 155009, 2014 WL 5420225, at *7 (S.D.N.Y. Oct. 24, 2014)............. 13

Sikol v. Wyeth, Inc.,
   2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008) ................................................ 14

State Farm Mutual Automobile Ins. Co. v. Fayda,
   2015 U.S Dist. LEXIS 162164, 2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015) ...... 2-3, 13, 16, 17

State Farm Mutual Automobile Ins. Co. v. Fayda,
   2016 U.S. Dist. LEXIS 119487, 2016 WL 4530890 (S.D.N.Y. March 24, 2016) ..................... 3

U.S. v. Doe,
   219 F.3d 175 (2d Cir. 2000)...................................................................... 18

U.S. v. Int'l Brotherhood of Teamsters,
   119 F.3d 210 (2d Cir. 1997)...................................................................... 18

U.S. v. Jacobs,
   117 F.3d 82 (2d Cir. 1997).................................................................. 18-19, 21

U.S. v. Kovel,
   296 F.2d 918 (2d Cir. 1961)...................................................................... 19

U.S. v. Mendelsohn,
   896 F.2d 1183 (9th Cir. 1990) ................................................................ 21-22

U.S. v. Zolin,
   491 U.S. 554 (1989)........................................................................ 18, 22, 23

Vaigasi v. Solow Management Corp.,
   2016 U.S. Dist. LEXIS 18460, 2016 WL 616386, at *44 (S.D.N.Y. Feb. 16, 2016 ............... 14

Zubulake v. UBS Warburg, LLC,
   217 F.R.D. 309 (S.D.N.Y. 2003) ................................................................. 14

**Rules and Statutes and Other Authorities**

8 Wigmore, Evidence §§ 2191 at 70, 554 (McNaughton 1961 Edition) ..................................... 18

8 Wigmore, Evidence §§ 2192 at 70, 554 (McNaughton 1961 Edition) ..................................... 18

8 Wigmore, Evidence § 2298, p. 573 (McNaughton 1961 Edition) ............................................. 22

8 Wigmore, Evidence § 2327, p 638 (McNaughton 1961 Edition) ............................................. 20

Fed. R. Civ. P. 26(b)(1)................................................................................................................ 12

Fed R. Civ. P. 37(a)(5)(A) .......................................................................................................... 24

Fed. R. Civ. P. 37(c)(1)............................................................................................................ 24-25

Fed. R. Evid. 401 ......................................................................................................................... 13

Defendant CKH Industries, Inc. ("CKH") respectfully submits this memorandum of law in support of its motion to compel Plaintiff Safe Step Walk-In Tub Co. ("Safe Step") to produce documents responsive to CKH's First Request for Documents and Things, for an award of costs and attorneys' fees associated with making this motion, and/or sanctions for non-compliance.

## INTRODUCTION AND BACKGROUND OF DISPUTE

The gravamen of the parties' dispute concerns Safe Step's scheme to defraud CKH and Safe Step's violations of franchise law.  As for this motion, it involves Safe Step's failure to fulfill its obligation under the Federal Rules by withholding various categories discovery based on relevancy and privilege.

At the discovery status conference on March 11, 2020, the Court (Hon. Lisa Margaret Smith, U.S.M.J.) authorized CKH to file a motion to compel discovery and production of Safe Step's financial records; sale-related documents involving Safe Step's sale to Ferguson plc, a multinational plumbing conglomerate; Safe Step's communications with other franchisees or dealers; and Safe Step's attorney-client communications exchanged in furtherance of its scheme to defraud.

Prior to the March 11, 2020 conference, CKH's request for Safe Step's financial records was proper for multiple reasons, including because Safe Step's claim of lost profit damages in excess of $1.5 million.  (See Feerick Decl. Ex. "C"[1], Safe Step's Rule 26 Disclosure, at p. 3, ¶ C).  Safe Step's financial documents were also directly relevant to Safe Step's unjust enrichment claim, CKH's unjust enrichment affirmative defense, and Safe Step's overall scheme to defraud. Nevertheless, Safe Step supplied no legitimate reason for withholding its financial records.

At the discovery status conference, Safe Step, for the first time, withdrew its claim for

---

[1] Unless otherwise stated, all references to exhibits are to exhibits attached to the Feerick Declaration dated April 10, 2020.

lost profits in the hopes of thwarting discovery of its financial records.[2]   But Safe Step's unilateral decision did not remove its financial records from among the other items subject to discovery.   Indeed, Safe Step's financial documents remained relevant and likely to lead to admissible evidence with respect to Safe Step's financial motive for perpetrating franchise and common law frauds, among other things, against CKH.

At the conference, CKH pointed to this Court's September 20, 2018 Opinion and Order (Hon. Nelson S. Roman, U.S.D.J.), which expressly noted that Safe Step's operations qualified as a franchise under applicable states law, that CKH's counterclaims asserted that Safe Step violated each regional agreement with CKH, imposed unreasonable standards on CKH as part of a scheme to defraud, and that those acts by Safe Step were prohibited under each relevant state statute.   (ECF No. 92 at pp. 10-11).   CKH advised that it has repeatedly explained that Safe Step's course of dealings was designed to perpetrate a fraud by intentionally escalating CKH's costs in an effort to constructively terminate CKH's franchises and unlawfully compete against CKH.   (Id. at pp. 15-16).   CKH detailed that Safe Step's scheme involved stealing CKH's market share – as well as that of other franchisees – to enable Safe Step to position itself to roll up its entire franchise operation into a larger plumbing conglomerate.   Such roll up was realized during the pendency of this litigation when Safe Step sold to Ferguson plc, a vast multi-national plumbing conglomerate. CKH is entitled to responsive documents that are highly probative of Safe Step's motivation for engaging in the fraud and the gains it realized as a result.

Citing to State Farm Mutual Automobile Ins. Co. v. Fayda, 2015 U.S Dist. LEXIS

---

[2] After the Discovery Status Conference, on March 31, 2020, Safe Step confirmed in writing to CKH's Counsel that it will not seek damages related to any lost profits by Safe Step or any impairment of or damage to Safe Step's goodwill.

162164, 2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015)[3], CKH highlighted that evidence of motive for participating in a fraudulent scheme is relevant to such claims and financial documents are discoverable to establish that motive. See State Farm Mutual, 2015 WL 7871037, at *3.  While, of course, financial gain is generally behind the motive for committing a fraud, CKH quoted specific, relevant language from State Farm Mutual to highlight that it would be an unlikely trial strategy for a party to argue to the fact-finder that the target participated in a fraud for financial gain and then fail to put on evidence of such gain:

> The concession that money can be a motive for participation in fraud is well-taken.  Having admitted this, however, it is unclear why the Kiner Defendants would imagine that discovery tending to establish such motive – that is, discovery revealing sources and amounts of the Kiner Defendants' profits – is irrelevant.  It would be an unlikely trial strategy for the plaintiff to argue to the fact-finder that the Kiner Defendants participated in the fraud and RICO enterprise for financial gain but then fail to put on evidence of such gain.

Id. at *3.  Thus, CKH's requested financial documents are relevant to the issue of Safe Step's motive, and Safe Step was required provide such relevant documents.

As for Safe Step's Ferguson sale related documents, while CKH argued these documents were relevant to Safe Step's lost profits claim, they are also relevant to Safe Step's unjust enrichment claim, CKH's unjust enrichment affirmative defense, and CKH's counterclaims. These documents are relevant because they concern the market share CKH occupied before Safe Step stole CKH's share, thus producing an ill-gotten gain for Safe Step when Safe Step earned a benefit upon rolling up its entire franchise network into Ferguson plc.  CKH argued the relevant documents had to be produced.  Safe Step refused.

Similarly, CKH argued that the agreements and communications with other

---

[3] This decision was confirmed at 2016 U.S. Dist. LEXIS 119487, 2016 WL 4530890 (S.D.N.Y. March 24, 2016).

franchisees/dealers are likely to show that Safe Step stole market share from them and earned a benefit off of them too.  These documents are likely to expose Safe Step's strategy of increasing the marketing costs for the purpose of stealing other franchisees'/dealers' respective market shares. They are relevant to Safe Step's financial motive for perpetrating its scheme to defraud and bear on Safe Step's pattern and practice that CKH unfortunately fell victim to.  Importantly, in expanding into the franchisees' markets, Safe Step did not offer the former franchisees' market share to the remaining non-Safe Step franchisees/dealers.  Rather, Safe Step took over the market shares itself in prelude to its roll up into Ferguson plc, and had to provide the documents.

At the discovery conference, CKH pointed out that, in explaining the appropriateness of the foregoing requests for discovery and production, Safe Step had previously argued relevancy only.  (See Feerick Decl. Ex. "P", Safe Step's March 5, 2020 Letter to CKH, at p. 2).  There was no issue of undue burden, no showing that the documents may be obtained from alternate sources, and no showing third-party rights of privacy were implicated.  Because the requested financial records were relevant, CKH demanded the production of Safe Step's financial records, Ferguson sale-related documents, and other franchisee/dealer communications and documents, as required.  These documents went to the core of the parties' contentions in this litigation.  There was nothing novel or surprising about CKH's requests.

In addition, CKH sought communications that Safe Step had with its counsel in furtherance of the alleged scheme to defraud.  The issue of attorney-client privilege waiver has been in the case from its earliest days.  CKH pointed to Exhibit "H" of its Second Amended Answer with Counterclaims.  Exhibit "H" is an email from September 17, 2014, from Stuart Hall of Safe Step, that disclosed to a third party the summarized contents of Safe Step's advice from its counsel, stating, in pertinent part:

4

> Couple of things on the Dealer Agreement for your consideration as you review. Our counsel recommended we split out certain states which impacted you due to franchise law in the state, specifically New Jersey, Rhode Island, and Conn. Full disclosure in that we did this to limit any potential legal exposure just to the territories in those states. So the first agreement attached is for Mass. and New York.

(ECF No. 69 - Exhibit "H"). Safe Step was not negotiating with counsel when it delivered the email; it was communicating with franchisees/dealers. Id. Safe Step referred to its attorney's opinion to allay the concerns of the franchisees/dealers about possible illegal acts, to create the appearance of compliance with laws, and to conceal or cover-up the franchise laws it was violating or about to violate, and the assertion to a third party of each of these motivations forfeited the privilege. Because Safe Step disclosed the summary contents of its legal advice to its franchisees/dealers for commercial purposes, Safe Step waived privilege.

Assuming, without conceding, that Safe Step did not affirmatively waive privilege, CKH argued there was probable cause to believe that the preparation and use of the dealer agreements broken out by state was part of Safe Step's scheme of ongoing fraud. As such, communications related to the dealer agreements is available to CKH under the crime-fraud exception to the attorney-client privilege. This exception does not limit production to matters relating to crimes, but covers matters relating to torts and frauds. Anything that addressed the future performance of the scheme to defraud was relevant and had to be produced. Safe Step's privilege log shows that legal advice given to Safe Step preceded the effort to take back the market shares from the franchisees/dealers. At a minimum, CKH requested that the Court review the relevant documents *in camera* to determine if they fall within the exception. Should the actual advice differ from the summarized opinion relayed to the franchisees/dealers, those communications might be part of the fraud or its concealment and cover-up and available to CKH anyway.

In defending the non-production, Safe Step attempted to minimize CKH's arguments.

First, as mentioned above, Safe Step withdrew its claim for lost profits. Next, Safe Step claimed the Ferguson sale-related documents had nothing to do with the events of 2014–2015, because the sale occurred in 2018. Safe Step first represented that CKH was not mentioned at all in the sale documents. Then, Safe Step changed course and suggested that there was only one mention of CKH in the sale documents - in a schedule listing pending litigation - and nothing else; arguing this was much ado about nothing. Next, Safe Step claimed that the interactions with other franchisees/dealers were outside the parameters of the dispute here for marketing fees. And, Safe Step concluded by arguing that there was no waiver of privilege based on what had communicated to Safe Step prior to the September 17, 2014 email or in the email itself.

In reply, notwithstanding the concession that lost profits will not be sought, CKH pressed that the financial documents related to loss profits were relevant to CKH's damages since any ill-gotten gain must be disgorged and paid over. Safe Step's Ferguson sale-related documents were also relevant even if occurring years after the misconduct because the sale had to occur after the market shares were taken back, because that is how the benefit of the fraud was realized. The roll up sale had to follow the taking of market share from the oppressed franchisees/dealers. Otherwise, the franchisees/dealers themselves would have been paid purchase money by Ferguson and there would be no claim for damages. By removing the franchisees/dealers and rolling up their respective territories, Safe Step alone was unjustly enriched. The interactions with the other franchisees/dealers that were equally oppressed and run out of business went right to the heart of the scheme to defraud and Safe Step's financial motive. The relevant documents had to be disclosed, as required by the well settled case law on financial motive in this district. Finally, CKH again requested that the Court look at the attorney-client communications before making any ruling on privilege waiver or the applicability of the crime-fraud exception.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On September 23, 2015, Safe Step commenced this amount in controversy action as though a mere collection action against CKH.  (Feerick Decl. Ex "A" - ECF No. 1), seeking to recover, among other things, an alleged debt in the approximate sum of $500,000 for the purported breach of a 2014 Marketing Addendum to various Dealer License Agreements ("DLAs").  (Id.).

On October 14, 2015, CKH answered Safe Step's complaint and asserted its own counterclaims.  (ECF No. 13).  On October 16, 2015, CKH brought and Safe Step opposed an order to show cause for a preliminary injunction and temporary restraining order.  (ECF No. 19-21).  After the Parties appeared for oral argument on October 23, 2015, the Court denied CKH's application for injunctive relief on October 26, 2015.  (ECF No. 29).

CKH filed an amended answer with counterclaims on November 4, 2015.  (Ex. "B" - ECF No. 33).  On December 2, 2015, the Parties exchanged Rule 26(a) disclosures, including Safe Step's disclosure asserting lost profits in excess of $1.5 million.  On December 3, 2015, the Parties appeared for an initial conference, and a discovery plan, scheduling order, and case management plan was entered.  (ECF Nos. 41-44).  However, rather than answer CKH's counterclaims, Safe Step sought permission to move to dismiss CKH's counterclaims, which was granted.  Safe Step's motion to dismiss was fully submitted on March 11, 2016.  (ECF Nos. 49-57).  Discovery stalled until the Court decided Safe Step's motion by Opinion and Order, dated March 17, 2017.  (ECF No. 59).  The Court's Order also granted CKH leave to file an amended answer with counterclaims "that conform[ed] with [this] Opinion."  (Id. at 34).

In accordance with the Court's Opinion and Order, CKH filed an amended answer on April 3, 2017.  (Ex. "E" - ECF No. 61).  Thereafter, Safe Step filed a second motion to dismiss

CKH's counterclaims and a motion for summary judgment on Safe Step's own claims, which CKH opposed.  (ECF Nos. 78-87).[4]  Safe Step's motion was deemed fully submitted on October 3, 2017.  (ECF Nos. 78-91).  Again, discovery stalled.  Safe Step still had not filed an answer to CKH's counterclaims.

On September 20, 2018, the Court rendered an Opinion and Order on Safe Step's second motion to dismiss CKH's counterclaims and Safe Step's motion for summary judgment on its own claims.  (Ex. "F" - ECF No. 92).  The Court granted in part and denied in part Safe Step's motion to dismiss CKH's counterclaims, and denied Safe Step's motion for summary judgment.  (Id.)  In addition, the Court's Order directed Safe Step to file an answer to CKH's counterclaims and confer, complete, and submit to the Court a case management plan before the initial pre-trial conference, which the Parties' Counsel dutifully did.  (Id.).

Rather than file an answer to CKH's counterclaims, Safe Step filed another pre-motion letter on October 11, 2018, which requested permission to file yet another pre-answer motion; this time, a motion to compel arbitration and stay proceedings.  (ECF No. 93).  CKH opposed.  (ECF No. 94).  The Court granted Safe Step leave to file its motion.  (ECF No. 95).  On June 25, 2019, the Court denied Safe Step's motion to compel arbitration and to stay the proceedings.  (Ex. "G" - ECF No. 101).  The Court found Safe Step had waived its right to arbitrate by engaging in significant motion practice and causing substantial delay, which resulted in prejudice to CKH.  Most pointedly, the Court stated:

> Plaintiff's conducts also suggest a questionable disingenuousness, if not
> gamesmanship, which the FAA does not protect. *See Kramer*, 943 F.2d at
> 176 (noting that presumption in favor of arbitration was not intended to

---

[4]Notably, when CKH filed a letter motion seeking to compel Safe Step to withdraw its motion for summary judgment, Safe Step opposed CKH's application and thus doubled-down on its request to file a motion for summary judgment on its complaint.  (ECF Nos. 69-70).  The Court permitted Plaintiff to file a motion for summary judgment, which Plaintiff did.  (ECF No. 71).  Discovery stalled further.

protect deliberate maneuvers between litigation and arbitration).   It is within both Parties' right to "[choose] not to invoke the clause in defense to the lawsuit either with regard to arbitration or venue" (Ct. Order p. 9, n.8). Yet after receiving adverse determination on two Motions to Dismiss and one Motion for Summary Judgment, Plaintiff's moving for arbitration demonstrates an inclination to game and exploit the system, which this Court will not indulge.   Accordingly, Plaintiff's Motion to Compel Arbitration and stay Proceeding must be denied.  (Id. at p. 9).

The next day, on June 26, 2019, the Court (Hon. Lisa Margaret Smith, U.S.M.J.) issued an Order to facilitate the progress of pre-trial discovery and control discovery objections. (Ex. "H" - ECF No. 102).  On July 9, 2019, Safe Step filed its answer to CKH's second amended counterclaims.  (Ex. "I" - ECF No. 104).   On September 30, 2019, the Parties exchanged discovery demands.  Among the demands included in CKH's First Request for Production of Documents and Things were:

> **Demand No. 4:**   All agreements entered into between Plaintiff and Ferguson plc, relating to any sale, acquisition, transaction and/or merger between Plaintiff and Ferguson plc, including, but not limited to, any letter of intent, binder, or purchase agreement.
>
> **Demand No. 14:**   Plaintiff's financial records, including sales reports, profit and loss statements, operating costs, financial statements and bank statements.
>
> **Demand No. 17:**   All franchise disclosure documents provided by Plaintiff to any other dealer, franchisee, or other entity. (Ex. "J").

On October 30, 2019 – within 30 days of receiving Safe Step's demands – CKH responded to Safe Step's demands and produced almost 5,000 pages of paper discovery.  On that same date, however, Safe Step responded to CKH's demands without producing a single document, opting instead to withhold its documents from disclosure while the Parties attempted mediation. (Ex. "K").

On February 21, 2020, after mediation failed, Safe Step amended its initial responses to CKH's demands, and for the first time, provided paper discovery.  However, the discovery

provided did not include materials responsive to the above-detailed demands. (Ex. "N").

By letter, dated February 26, 2020, CKH protested that Safe Step had not properly responded to CKH's demands. (Ex. "O"). CKH followed-up its letter, by conferring telephonically with Safe Step's counsel on March 5, 2020, but could not resolve the dispute as to the discoverability of the documents responsive to the above-stated demands.

By letter, dated March 5, 2020, Safe Step confirmed in writing that it withheld from production documents responsive to Demand Nos. 4, 14, and 17, and materials listed on Safe Step's privilege log. (Ex. "P"). As to Demand No. 4, Safe Step objected to producing the sale-related documents "because the sale of Safe Step to Ferguson has no bearing on nor relevance to the issues in this lawsuit or the claims of either party." (Id. at p. 2). Safe Step said that it

> disagree[d] with CKH's position that Safe Step 'must produce' all documents between Safe Step and Ferguson. The sale of Safe Step to Ferguson closed on or about July 31, 2018 – about three years after the dispute between the parties initially arose. None of the documents between Safe Step and Ferguson discuss, mention, or concern, CKH, Scott Keegan, Ted Cline, or this lawsuit. Accordingly, they are not relevant to this case, and Safe Step objects to the producing such documents. (Id. at p. 2-3).

It is worth noting that, at the March 11, 2020 discovery status conference, Safe Step's Counsel modified this representation to clarify that there was mention of CKH and this lawsuit in the sale documents; namely, in a schedule of pending litigation.[5] Safe Step's Counsel made no mention of what, if any, due diligence was permitted or conducted on CKH or this lawsuit once the lawsuit was scheduled. It would appear unlikely that no due diligence documents exist.

As to Demand No. 14, Safe Step objected to "producing all of its financial records, because, unlike CKH, the financial performance of Safe Step is not at issue in this lawsuit. Safe Step's financial records are not relevant to the issues in dispute, and Safe Step objects to

---

[5] See Ex. "T" - Transcript of March 11, 2020 discovery status conference at pp. 28-29.

producing such documents." (Id. at p. 2).  To the extent that CKH did not understand the nature of Safe Step's objection, Safe Step reiterated in virtually the same language that it "objects to producing all of its financial records, because, unlike CKH, the financial performance of Safe Step is not at issue in this lawsuit.  Safe Step's financial records are not relevant to the issues in dispute, and Safe Step objects to producing such documents." (Id. at p. 3).

As to Demand No. 17, Safe Step raised multiple objections:

> [F]irst, Safe Step objects to phrase 'franchise disclosure documents,' because I do not know what documents CKH is looking for here.  Second, Safe Step's relationships with its other dealers have no bearing on its relationship with CKH or the matters at issue in this lawsuit or the claims of either party.  That said, to the extent Request No. 17 seeks Safe Step's Dealership / License Agreements with its other dealers, such documents are not relevant to the issues in dispute, and Safe Step objects to producing such documents. (Id.).

Finally, as to the Stuart Hall email of September 17, 2014 that was attached to the Second Amended Counterclaims as Exhibit "H", Safe Step wrote:

> Safe Step disagrees that such communication waived any privilege between Safe Step and its counsel.  To the extent you have relevant case law to support your position, I am happy to discuss this with you further.  The cases cited in your February 26 letter largely have to do with the crime-fraud exception to the attorney-client privilege, which I do not believe is applicable here.  As you know, in order to justify invocation of this exception to the privilege, the discovering party bears the burden of demonstrating that there is probably cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the crime or fraud.  See In re Omnicom Group, Inc. Sec. Litig., 233 F.R.D. 400, 4040 (S.D.N.Y. 2006).  There is no proof in the record nor good faith argument to be made that any e-mails between Safe Step and its counsel were in furtherance of a crime or fraud. (Id. at p. 5).

Accordingly, on March 6, 2020, as part of a letter detailing CKH's compliance with discovery mandates and Safe Step's noncompliance, CKH filed its discovery objections with the Court, specifying the exact nature of its discovery dispute. (Ex. "Q" – ECF No. 133, at p. 3). By letter, dated March 10, 2020, CKH also specifically confirmed with Safe Step the crux of the

discovery dispute at issue.  (Ex. "R").  CKH confirmed that "Safe Step only withheld documents (a) responsive to Requests Nos. 4, 14, and 17 on the basis of relevancy, and (b) listed on Safe Step's Amended Privilege Log, dated March 6, 2020."  (Id.).  Safe Step responded via email on March 11, 2020, that CKH's understanding was "correct."  (Ex. "S").

On March 11, 2020, Magistrate Judge Smith entertained the parties at a discovery status conference.  The arguments were presented as detailed above.  (Ex. "T").  After conferencing the case in detail for one and one-half hours, Magistrate Judge Smith granted CKH permission to make a motion to compel disclosure by April 10, 2020; directed responses by May 11, 2020; and directed any reply by May 16, 2020.  Id. at pp. 37-38.  Accordingly, this motion is brought.

## ARGUMENT

### I.  SAFE STEP IS REQUIRED TO PRODUCE ALL RELEVANT DOCUMENTS

#### A.  Legal Standard

The 2015 amendments to the Federal Rules of Civil Procedure ("FRCP") "govern in all proceedings in civil cases" commenced after December 1, 2015, and, insofar as just and practicable, all proceeding [ ] pending" on that date.  (See Order re: Amendments to FRCP (April 29, 2015)).

Rule 26(b)(1), as amended, permits discovery of:

> Any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the mount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  See, e.g., IBM Corp. v. Naganayagam, 2016 WL 11483935 (S.D.N.Y. Dec. 9, 2016) (Smith, M.J.) (district courts have broad discretion in deciding motions to compel).

12

Information is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  "Relevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." State Farm Mutual Automobile Ins. Co. v. Fayda, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). Rule 26's relevance requirement permits discovery of information that "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Montesa v. Schwartz, 2015 U.S. Dist. LEXIS 186262, 2015 WL 13016354, at *1 (S.D.N.Y. Nov. 3, 2015).  As such, "relevance for the purpose of discovery is broader in scope than relevance for the purpose of trial itself." Refco Group, Ltd., LLC v. Cantor Fitzgerald, LP, 2014 U.S. Dist. LEXIS 155009, 2014 WL 5420225, at *7 (S.D.N.Y. Oct. 24, 2014) (quoting Arch Assocs., Inc. v. HuAmerica Int'l, Inc., 1994 U.S. Dist. LEXIS 746, 1994 WL 30487, at *1 (S.D.N.Y. Jan. 28, 1994)).

While the burden of demonstrating relevance is on the party seeking discovery, the revised rule "does not place on the party seeking discovery the burden of addressing all proportionality considerations." Id. at *2; see also Fireman's Fund Ins. Co. v. Great American Ins. Co. of New York, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("[o]nce relevance has been shown, it is up to the responding party to justify curtailing discovery").

"If a party objects to a discovery request, that party bears the burden of showing why discovery should be denied." IBM Corp. v. Naganayagam, 2016 WL 11483935, *3 (S.D.N.Y. Dec. 9, 2016) (quoting Financial Guaranty Ins. Co. v. Putnam Advisory Group, 314 F.R.D. 85, 87 (S.D.N.Y. 2016)).  "The resisting party must show how, 'despite the broad and liberal

construction afforded the federal discovery rules, each request is not relevant, or how each request is overly broad, burdensome, or oppressive, by submitted affidavits or offering evidence revealing the nature of the burden.'" Id. (quoting Financial Guaranty Ins. Co., 314 F.R.D. at 87 and citing Sikol v. Wyeth, Inc., 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008)).

In this regard, "[p]roportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." Vaigasi v. Solow Management Corp., 2016 U.S. Dist. LEXIS 18460, 2016 WL 616386, at * 44 (S.D.N.Y. Feb. 16, 2016). Proportionality factors may limit discovery only where there is marginal utility of the discovery sought. Zubulake v. UBS Warburg, LLC, 217 F.R.D. 309, 322-23 (S.D.N.Y. 2003).

### B. The Financial Records And Communications With Other Dealers Sought Are Relevant And Discoverable.

To defeat Safe Step's breach of contract claim, CKH may establish that franchise law prohibits the Marketing Addendum's extension beyond its stated term and is no longer in force or effect, nor binding, nor enforceable (Ex. "E" – 14th Affirmative Defense); may defend on the presence of fraud, misrepresentation, or other circumstances of oppression, regarding the for-profit nature of the marketing campaign, the sales volume criteria, the purchase price to be paid for customer leads, the terms and conditions of purchase, and/or the fines and penalties to be paid thereunder (Ex. "E" – 15th Affirmative Defense); may show that Safe Step misrepresented material facts about the foregoing items, made its misrepresentations with knowledge of their falsity, made them with the intent to induce reliance upon them, and CKH actually relied on the misrepresentations when entering into and exercising the option to extend the DLA (Ex. "E" – 15th Affirmative Defense); may show that Safe Step represented that the marketing campaign would be conducted on a not-for-profit basis when it knew the campaign would be conducted on

14

a for-profit basis because Safe Step wanted to recover all monies it invested into the business from profits, and would unilaterally determine the sales volume criteria, the purchase price to be paid, the terms and conditions of purchase, and the fines and penalties to be paid, all in its sole discretion (Ex. "E" – 15th Affirmative Defense); and that the foregoing misrepresentations left CKH with the belief that the marketing campaign would not be increasingly costly and detrimental to its for-profit business (Ex. "E" – 15th Affirmative Defense).  The financial records and communications with other franchisees/dealers are relevant to establish these defenses.[6]

To defeat Safe Step's breach of contract claim, CKH may also establish that Safe Step may not enforce the Marketing Addendum because Safe Step was in default of its obligations under the DLAs, including, but not limited to, providing CKH exclusive territories, permitting CKH minimum sales or advertising in lieu of participation in a national marketing campaign, sending leads to licensee without charge, referring all inquiries in CKH's exclusive territories to CKH, holding CKH harmless for any liabilities of licensor relative to sales, distribution, and/or advertising, prohibiting affiliates and other licensees from selling or advertising or marketing inside CKH's exclusive territories, prominently stating in national advertising campaigns that the products are sold only outside CKH's exclusive territories, refraining from invading CKH's exclusive territories, refraining from taking leads from CKH, and terminating the agreement, constructively or otherwise.  (Ex. "E" – 16th Affirmative Defense).  Again, the financial records and communications with other franchisees/dealers are relevant to these defenses.

To prevail on an unjust enrichment claim, Safe Step must demonstrate:  "(1) that [CKH] was enriched; (2) that the enrichment was at [Safe Step's] expense; and (3) that the

_____

[6] See Ex. "J" - CKH's First Request for Production of Documents and Things, Nos. 14 and 17; see also, Ex. "M" - CKH's Second Request for Production of Documents and Things, Nos. 6, 7, 12, 13, 14, 15, 16, 19, 22, 24, 29, 31, 32, 37, 40, 41, 42, 43, and 46.

circumstances are such that in equity and good conscience [CKH] should return the money or property to [Safe Step]." Golden Pacific Bancorp v. FDIC, 273 F.3d 509, 519 (2d Cir. 2001). To defeat the claim, CKH may show that Safe Step cannot obtain any equitable remedy upon an unconscionable bargain and/or where fairness is lacking and/or because of the gross inadequacy of the consideration exchanged and/or where Safe Step would be unjustly enriched, at CKH's expense. (Ex. "E" – 21st through 27th Affirmative Defenses). The financial records and communications with other franchisees/dealers are relevant to defeat the unjust enrichment claim and establish the franchise law and equitable defenses.

To prevail on a promissory estoppel claim, a plaintiff must demonstrate a clear and unambiguous promise, reasonable and foreseeable reliance by the party to whom the promise was made, and an injury to the party to whom the promise was made by reason of the reliance. See, e.g., Cyberchron v. Calldata Sys. Dev., 47 F.3d 39, 44 (2d Cir. 1995). To defeat the claim, CKH may establish enforcement of such a promise violates franchise law, the statute of frauds, or any other law or principle that is designed to protect businesses from the risk of fraudulent conduct. (Ex. "E"). The financial records and communications with other franchisees/dealers are relevant to defeat the claim and establish the franchise law and equitable defenses.

Beyond the foregoing, CKH has brought various counterclaims including franchise fraud and common law fraud. Id. The motive for the fraud is relevant. As stated in State Farm Mutual Automobile Ins. Co. v. Fayda, supra, case law in this circuit indicates that evidence of a target's motive for participation in a fraudulent scheme is relevant to such claims and the target's financial documents are discoverable to establish that motive. Id., 2015 WL 7871037, at *3. While it is a given that the motive for fraud is generally money, it would be an unlikely trial strategy for a party to argue to the fact-finder that the target participated in a fraud for financial

gain and then fail to put on evidence of such gain:

> The concession that money can be a motive for participation in fraud is well-taken. Having admitted this, however, it is unclear why the Kiner Defendants would imagine that discovery tending to establish such motive – that is, discovery revealing sources and amounts of the Kiner Defendants' profits – is irrelevant. It would be an unlikely trial strategy for the plaintiff to argue to the fact-finder that the Kiner Defendants participated in the fraud and RICO enterprise for financial gain but then fail to put on evidence of such gain.

Id. at *3. Thus, the requested financial documents are relevant to the issue of motive that will be presented to the fact-finder and must be provided.

### C. Safe Step's Ferguson Sale-Related Documents Sought Are Relevant and Discoverable

As for Safe Step's Ferguson sale-related documents, the documents are relevant to the unjust enrichment claim, the unjust enrichment affirmative defense, and CKH's franchise fraud and common law fraud counterclaims. Such documents are reasonably calculated to lead to the discovery of admissible evidence that will show that the financial motive for the scheme to defraud, the market share CKH occupied before Safe Step took over the share, and the ill-gotten gain Safe Step realized when Safe Step rolled up its entire franchise network into Ferguson plc. Such documents are reasonably calculated to lead to the discovery of admissible evidence.

### D. Safe Step's Agreements And Communications With Other Franchisees/Dealers Sought Are Relevant And Discoverable.

As for Safe Step's agreements and communications with the other franchisees/dealers, they are likely to show that Safe Step took back market share from them and earned a benefit off of them as well, in the same fashion. The documents are likely to reveal the strategy that went into increasing the marketing costs to take back the market share of the other franchisees/dealers. The documents are likely to reveal the financial motive for the scheme to defraud. Clearly, in expanding its role in the market, Safe Step did not offer the former franchisees' market share to

the remaining non-Safe Step franchisees/dealers.  Rather, Safe Step took over the market shares

in prelude to the roll up and sale, and such relevant documents have to be produced where, as

here, they are reasonably calculated to lead to the discovery of admissible evidence.

## II. <u>ATTORNEY CLIENT PRIVILEGE HAS BEEN WAIVED AND/OR THE CRIME FRAUD EXCEPTION APPLIES</u>

### A. The Attorney Client Privilege Has Been Waived

"It is well settled that 'the burden of establishing the existence of an attorney–client

privilege, in all of its elements, rests with the party asserting it.'" <u>U.S. v. Doe</u>, 219 F.3d 175 (2d

Cir. 2000) (<u>quoting</u> <u>U.S. v. Int'l Brotherhood of Teamsters</u>, 119 F.3d 210, 214 (2d Cir. 1997)).

"Questions of privilege that arise in the course of the adjudication of federal rights are 'governed

by the principles of the common law as they may be interpreted by the courts of the United

States in the light of reason and experience.'" <u>U.S. v. Zolin</u>, 491 U.S. 554, 562 (1989).  Since the

attorney-client privilege "stands in derogation of the public's 'right to every man's evidence, …

it ought to be strictly confined within the narrowest possible limits consistent with the logic of its

principle." <u>U.S. v. Int'l Brotherhood of Teamsters</u>, 119 F.3d 210, 214 (2d Cir. 1997) (<u>quoting</u> <u>In</u>

<u>re Horowitz</u>, 482 F.2d 72, 81 (2d Cir. 1973), <u>cert. denied</u>, 414 U.S. 867 (1973); 8 Wigmore,

Evidence §§ 2192, 2291 at 70, 554 (1961)).

The applicable test for determining if a document is entitled to attorney-client or work

product privilege is:  "(1) [w]here legal advice of any kind is sought (2) from a professional legal

adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in

confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by

himself or the legal adviser, (8) except the protection be waived." <u>In re Richard Roe, Inc.</u>, 68

F.3d 38, 39-40 (2d Cir. 1995) (<u>quoting</u> <u>U.S. v. Kovel</u>, 296 F.2d 918, 921 (2d Cir. 1961)).

As for waiver, "[p]ublic, even extrajudicial, disclosures constitute a waiver of privilege

'for the communications or portions of communications disclosed.'" <u>Jacobs</u>, <u>supra</u>, at 91 (quoting <u>In re Kidder Peabody Sec. Litig.</u>, 168 F.R.D. 459, 469 (S.D.N.Y. 1996). In <u>Kidder Peabody</u>, for example, a publicly released report paraphrased specific statements made in the course of arguably privileged communications. <u>Id</u>. at 470. Since "disclosure of the substance of a privileged communication is as effective a waiver as a direct quotation since it reveals the 'substance' of the statement", the privilege was waived as to the specific statements. <u>Id</u>.[7]

Applying the <u>Kidder Peabody</u> rationale to <u>Jacobs</u>, where Jacobs had disclosed the substance of the two letters, the Second Circuit stated: "His waiver, which served to waive the substance of the letters, was as effective a waiver as a direct quotation (or a copy of the letters)." <u>Jacobs</u>, <u>supra</u>, at 91.

Likewise, in <u>In re John Doe Corp.</u>, 675 F.2d 482 (2d Cir. 1982), a subpoena called for production of materials relating to the retention of a politically active lawyer holding elective office who was paid almost $100,000 ostensibly as a legal fee, which John Doe Corp. protested on the grounds that the documents – including a business ethics review - were protected by attorney-client privilege. John Doe Corp. moved to quash the subpoena. The government, in turn, moved to compel production under the crime-fraud exception arguing that the materials evidenced a bribe to settle a controversy favorably to John Doe Corp, as there were no records showing services rendered in return for payment. The government argued that disclosure of the payment-related materials to its accountant, as part of his audit and his integrity examination of the business ethics review, as well as the disclosure of same to its underwriter, amounted to a waiver of any privilege. The government also argued that disclosing information to the

---

[7]As explained in Wigmore, "the client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter." 8 Wigmore, Evidence § 2327, p 638 (McNaughton 1961 Edition).

accountant, as part of his audit, which audit was necessary to permit John Doe Corp. to trade its securities, evidenced a corporate decision to use the materials for purposes other than seeking legal advice. The disclosure had been sparked by the accountant's responsibilities in conducting the audit, rather than by any concern for obtaining legal advice requiring the aid of an accountant. As such, the disclosures to the accountant unrelated to the seeking of legal advice were not privileged. Likewise, the disclosures to the underwriter were not privileged because they were acts consistent with the corporation's selective disclosure whenever it decided that the materials could be put to beneficial purposes, including a plan for covering-up and concealing the original wrong. Id. The Court, in John Doe Corp., made clear that such disclosure constitutes a waiver, holding:

> In the corporate context, restricting internal inquiries about particular matters to corporate counsel in the name of the giving and receiving of legal advice will afford the benefits of the privilege only so long as those inquiries and responses they generate are used only for the designated purposes. Once a corporate decision is made to disclose them for commercial purposes, no matter what the economic imperatives, the privilege is lost, not because of voluntariness or involuntariness, but because the need for confidentiality served by the privilege is inconsistent with such disclosure.

675 F.2d at 489.

Disclosing the business ethics review was for purposes other than seeking and receiving legal advice. "It was used to induce underwriters and auditors involved in the public offering to believe that no irregularity had been found with regard to the payment to the lawyer. To that extent, our holding on the ongoing criminality overlaps our ruling as to waiver. But it does not rest solely upon that, for we also find probable cause to believe that other actions were taken to cover up the criminal scheme after completion of the relevant portions of the business ethics review." Id. at 491.

Likewise, here, Safe Step disclosed the summary contents of its legal advice to its franchisees for commercial purposes and in the process waived privilege. Safe Step referred to its attorney's opinion to allay the concerns of the franchisees about possible illegal acts, to create the appearance of compliance with laws, and to cover up the franchise laws it was violating, and each of which forfeited the privilege. There is probable cause to believe that the preparation and use of dealer agreements broken out by state was part of a scheme of ongoing criminality and/or a scheme to defraud. Where the material is in aid of a criminal or fraudulent scheme, fear of its disclosure may serve a useful deterrent purpose and be the kind of rare crime or fraud disclosed through a protected communication.

Moreover, it is well-established that "[a]n inaccurate statement of a privileged communication waives the privilege with respect to that communication." U.S. v. Jacobs, 117 F.3d 82, 89 (2d Cir. 1997) (citing U.S. v. Mendelsohn, 896 F.2d 1183, 1188-1189 (9th Cir. 1990)). In Mendelsohn, the defendant was selling an illegal bookmaking computer program through the mail, and, in the course of the sale, told an undercover federal agent posing as a buyer that his attorney had said that selling the program was legal. The Ninth Circuit held, in a ruling with which the Second Circuit agreed, that the privilege was waived even if the defendant misstated what his attorney told him. Id.

Accordingly, in Jacobs, where testimony showed that Jacobs had represented to customers that his attorney had told Jacobs that a debt elimination plan was legal, the reality was that Jacobs' attorney recommended against doing the deal, writing: "[L]et me reiterate my overall recommendation to you: Don't do it!" Id. at n. 6. Two attorney-client letters were at issue. Applying the Mendelsohn rationale to the two attorney-client letters, the Second Circuit held that the letters were discoverable "because their gist has been disclosed and they add literal

meaning to that disclosure and correct the error in Jacobs' rendition." It stated: "Here, the substance of the two letters was disclosed (albeit incorrectly).  There thus appears to have been a waiver as to the two letters, and they may be introduced to indicate their true import."

### B.  The Crime-Fraud Exception Applies

It is important to understand that "[s]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." U.S. v. Zolin, 491 U.S. 554, 562 (1989).  "The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection – the centrality of open client and attorney communication to the proper functioning of our adversary system of justice – 'ceas[es] to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing.'"  Id. at 562-562 (citing 8 Wigmore § 2298, p. 573).  It does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime.  Id.

The applicable test for determining if a document falls within the crime/fraud exception requires examining "(i) whether 'the client communication or attorney work product in question was itself in furtherance of the crime or fraud" and (ii) whether there is 'probable cause to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal' or fraudulent activity."  In re Richard Roe, Inc., 168 F.3d 69, 71 (2d Cir. 1999) (quoting In re Richard Roe, Inc., 68 F.3d at 40 ("Roe I")).  "The probable cause necessary to sustain the exception is not an overly demanding standard." A.I.A. Holdings, S.A. v. Lehman Brothers, Inc., 1999 U.S. Dist. LEXIS 1183, 1999 WL 61442 (S.D.N.Y. Feb. 3, 1999).  There is little practical difference between describing the burden as requiring 'probable cause' or a 'prima facie' showing.  Id. at n. 12 (citing In Re Grand Jury

Subpoena Duces Tecum, 731 F.2d 1032, 1039 (2d Cir. 1984).  "Both require that a prudent person have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud." Id.

"Once such a showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court.  The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." U.S. v. Zolin, 491 U.S. 554, 572 (1989).  "[T]he party opposing the privilege may use any nonprivileged evidence in support of its request for *in camera* review, even if its evidence is not 'independent' of the contested communications." Id. at 573.  Any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged, may be used not only in the pursuit of *in camera* review, but also may provide the evidentiary basis for the ultimate showing that the crime-fraud exception applies. Id. at 574-575 and n. 12.[8]  Again, such "*in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." U.S. v. Zolin, 491 U.S. 554, 571 (1989).

Here, Safe Step referred to its attorney's opinion to allay the concerns of the franchisees about possible illegal acts, to create the appearance of compliance with laws, and to cover up the franchise laws it was violating, and each of which forfeited the privilege by placing it squarely within the fraud-crime exception.  There is probable cause to believe that the preparation and use

---

[8]And, in exercising its discretion, the district court "is also free to defer its *in camera* review if it concludes that additional evidence may be available that is not allegedly privileged, and that production of the additional evidence will not unduly disrupt or delay the proceedings." Id. at 572.

of the dealer agreements broken out by state was part of a scheme of ongoing criminality and/or a scheme to defraud. Where the material is in aid of an on-going criminal or fraudulent scheme, fear of its disclosure may serve a useful deterrent purpose and be the kind of rare crime or fraud disclosed through a protected communication. The fraud-crime exception applies and CKH submits that the Court should, at a minimum, conduct an *in camera* review of all such communications.

### III. THE COURT SHOULD AWARD COSTS AND REASONABLE ATTORNEYS' FEES ASSOCIATED WITH MAKING THIS MOTION

Pursuant to Rule 37, if a motion to compel is granted, the Court "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A); see, e.g., IBM Corp. v. Naganayagam, 2016 WL 11483935 (S.D.N.Y. Dec. 9, 2016) (Smith, M.J.) (explaining standard). The award of expenses is mandatory unless "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed R. Civ. P. 37(a)(5)(A). Here, no exception applies, and an award should be granted.

### IV. THE COURT SHOULD PRECLUDE EVIDENCE AS A DISCOVERY SANCTION AGAINST SAFE STEP

Rule 37(c)(1) of the Federal Rules of Evidence provides that:

> [a] party that without substantial justification fails to disclose information required by Rule 26(a) … is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.

Design Strategy, Inc. v. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006) ("Since Rule 37(c)(1) by its

terms does not require a showing of bad faith, we now hold that such a requirement should not be read into the Rule." Bad faith can, however, be taken into account). To the extent that Safe Step has, or in the future continues to, fail to produce relevant information without justification, a sanction equivalent to the nature of the evidence withheld should be crafted in the Court's exercise of its discretion for use upon any future motion or at trial.

## CONCLUSION

Based upon the foregoing, CKH respectfully requests that this Court compel discovery and production from Plaintiff Safe Step, award CKH costs and reasonable attorneys' fees associated with this motion, and/or sanction any willful non-compliance.

Dated:      South Nyack, New York
            April 10, 2020

                                          Respectfully submitted,

                                          **FEERICK NUGENT MACCARTNEY PLLC**

                                          By: _____
                                               Donald J. Feerick, Jr.
                                               Patrick A. Knowles
                                               Patrick J. McGorman
                                          96 South Broadway
                                          South Nyack, New York 10960
                                          Tel.: (845) 353-2000

                                          **GOLDSTEIN LAW FIRM PLLC**
                                          By: Jeffrey Goldstein
                                          1629 K St. NW - Suite 300
                                          Washington, DC 20006
                                          Tel: (202) 293-3947

                                          *Attorneys for Defendant CKH Industries, Inc.*

To: All Counsel of Record (*via* ECF)